FILED
IN CLERK'S OFFICE

UNITED STATES COURT
DISTRICT OF MASSACHUSETTS

2002 SEP 20  A 11: 49

U.S. DISTRICT COURT
DISTRICT OF MASS,

RECEIPT # 42013
AMOUNT $ 150.00
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. SES
DATE 9/20/02

Kim Northrup,

    Plaintiff,

vs.

Northeastern University,

    Defendant.

CIVIL ACTION NO.

**02-11853 RGS**

COMPLAINT AND DEMAND FOR TRIAL BY JURY

Jurisdiction

1) Jurisdiction is conferred by 28 U.S.C. 1331, as this action arises under the laws of the United States.

Parties

2) The Plaintiff, Kim Northrup, is a resident of the Commonwealth of Massachusetts, Middlesex County.

3) The Defendant, Northeastern University, is a private educational institution, with a principal place of business in Boston, Massachusetts.

Facts

4) Northrup was a graduate student at Northeastern from September, 1994 to June 1996.

DOCKETED



5) In October 1995, Northrup was sexually harassed by a NU Professor while she was attending the School as a graduate student.

6) Northrup then pursued her claim of harassment within the University framework.

7) In so doing, Northrup then learned from University Administrators that the said Professor had at least several prior documented incidences of sexual harassment and/ or sexual assault as against female Northeastern University students, and further learned that the University had failed to enact any meaningful remedial and/or punitive measures as against the Professor notwithstanding their actual notice of his conduct.

8) Due to the said harassment and due to the lack of response she received from the University as to the harassment of her personally by the Professor, Northrup filed suit in this Court in 1998 (<u>Northrup v. Northeastern University</u>, U.S.D.C., D.MA, No. 98-11488-RGS).

9) A jury was empaneled on September 4, 2001 in the above matter.

10) University Counsel was then assisted at trial by the law firm of Palmer & Dodge of Boston.

11) As of September 5, Trial Day 2, the local media (Boston Globe and Boston Herald) had commenced daily newspaper

coverage of the case.

12) The articles which then appeared daily in the above mentioned newspapers were quite damning to the University.

13) The said articles had detailed the ongoing trial testimony which evidenced, over Northeastern's persistent Objections, that University Administrators had received actual knowledge of the Professor's sexual harassment / assault as against female students **well prior** to his harassment of Northrup.

14) The articles further detailed how it was that the University nonetheless had allowed the Professor to remain on campus in a professional capacity on salary despite at least one express promise to at least one of the women victims (prior to Northrup) that he would be exited for a time certain.

15) The articles further detailed how it was that the evidence, again admitted over Northeastern's persistent Objections, indicated that Northrup had learned of the prior victims from University Administrators themselves and how a subsequent express promise **to Northrup herself** regarding exiting the Professor was, again, broken.

16) Lastly, the Articles detailed how the Professor himself was slated to testify on Friday, September 7th, and that it was anticipated that he would there and then plead the Fifth Amendment. This particular article was based upon the Professor's attorney in open Court informing the Court that

the Professor was going to plead the Fifth Amendment when called to testify by Northrup.

17) Given what the University was facing for that Friday with their own Professor slated to then plead the Fifth Amendment when asked repeatedly about assaulting several Northeastern young women students PRIOR TO AND INCLUDING NORTHRUP, and given the damning evidence of illegal discrimination and the deliberate indifference of the University in response thereto which was already before the jury, on the evening of Thursday September 6th, counsel for the parties were finally able to settle the lawsuit.

18) One of the express covenants of the Settlement Agreement between the parties then executed, was that Northeastern Agreed to forgive any debt which Northrup owed to it.

19) At the time of the settlement, Northrup had a debt of approximately three thousand dollars, give or take, to the University in the form of a "Perkins Loan".

20) The creditor for the Perkins loan was always and still remains the University, and the debtor, Northrup.

21) After the settlement, Northrup went abroad for several months.

22) Upon her return in Spring 2002, Northrup began to be harassed by the University Collections Department.

23) Unbeknownst to Northrup in her absence was the fact that the

University had, subsequent to the trial and in retaliation for Northrup's filing of the suit, her testimony therein, and the resulting bad press: "accelerated" the loan; added interest, fees, and charges thereon; placed the same into a "default" status; assigned the same to a credit collection agency, and reported Northrup to various national credit bureaus.

24) Despite continued communications by Northrup to the University that the loan was forgiven and for the ***University Counsel's Office*** to simply check the Settlement Agreement, the University has not changed its position relative to the loan's status.

25) CTI, the collection agency "assignee", then began trying to collect from Northrup, and by that time the amount had grown to approximately five thousand dollars.

26) Northrup even tried to negotiate ***with the very office of University Counsel which brokered the deal and had unfettered access to the Settlement Agreement*** to no avail.

27) Because the trail went so wrong for Northeastern, combined with the searing daily press coverage as above which put the school in an extremely bad public light, Northeastern was motivated to retaliate against Northrup for her filing of the suit, for her testimony in the suit, and for the negative public fallout thereby caused to the University.

28) The fact that the University was extremely upset about the outcome of the lawsuit was evidenced by a rearrangement of personnel within the University Counsel's Office shortly after trial.

29) The terms of the Agreement and the fact that Northeastern University was the creditor for the Perkins loan were both so clear, that no reasonable person with a remedial knowledge of the English Language and of the mechanics of a "Perkins" loan who had read the Agreement could conclude anything but that the debt was forgiven by dent of the Agreement.

30) Based upon Northrup's conversations with the University, the University has taken the position that they were not the creditor for the Perkins loan.

31) The above said outright fabrication / misrepresentation wherein Northeastern attempted to portray itself as not the creditor for the loan was a pretext to mask the real reason for the above continued harassment of Northrup, namely, retaliation for her filing of the lawsuit, for her testimony within the same which put Northeastern in a very bad light in the media and otherwise, and for her resounding success at the trial wherein it was a very good bet (by Thursday afternoon September 6th, 2001) that Northeastern would lose should the jury have finally received the case.

32) Northrup due to the above remains in bad standing with the credit reporting entities, and is still being pursued by the collection agency.

33) Because of the above conduct of Northeastern in reprisal for Northrup's legally protected activities, Northrup has been refused housing, has not been able to receive federal guaranteed loans necessary to further pursue her graduate studies, has been denied a mortgage, has suffered great emotional distress and damage to her character and reputation, has misspent substantial settlement funds on the notion that the debt had been cleared, has suffered damage to her civil rights, and has further suffered humiliation, loss of quality of life, pain, suffering, consequential damages, and has been otherwise damaged.

## Reprisal under Title IX of the Education Amendments of 1972
## 20 U.S.C. 1681-1688

34. Plaintiff adopts by reference all above allegations, and further alleges:

35. Northeastern is an Educational Institution receiving Federal financial assistance as defined by 20 U.S.C. 1681-1688.

36. Northrup was, on the basis of her sex, deliberately excluded from participation in, deliberately denied the benefits of,

or deliberately subjected to discrimination under, an educational program or activity receiving Federal financial assistance in violation of 20 U.S.C. 1681-1688, to and including being subjected to reprisal of a not insubstantial sort for the reasons set forth above.

WHEREFORE, the Plaintiff, Kim Northrup, demands judgment against Northeastern University in the amount of One Hundred Fifty Thousand Dollars, plus punitive damages, interest, reasonable attorney's fees, and the costs of this action.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted,
Kim Northrup,
By her attorney,

_____
Matthew Cobb
Law Office of Matthew Cobb
101 Tremont Street
Boston, Massachusetts   02108
(617) 357-7300
B.B.O. 556677